UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD LASKER,<br><br>                              Plaintiff,<br><br>v.<br><br>AROTECH CORPORATION, KENNETH W. CAPPELL, LAWRENCE F. HAGENBUCH, JON B. KUTLER, and JAMES J. QUINN,<br><br>                              Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934<br><br>JURY TRIAL DEMANDED |

Howard Lasker ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of information available to the public, except for allegations pertaining to the Plaintiff which are based on upon personal knowledge:

1.  Plaintiff bring this action against Arotech Corporation ("Arotech or the "Company") and the members of the Arotech board of directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9 promulgated thereunder ("Rule 14a-9"), in connection with the proposed acquisition of Arotech by Argonaut Intermediate, Inc. ("Argonaut"), an affiliate of the Rye, New York-based private equity firm, Greenbriar Equity Group, L.P.

2.  Defendants violated Exchange Act Sections 14(a) and 20(a) and Rule 14a-9 by causing the public dissemination of a materially incomplete and misleading proxy statement (the "Proxy Statement") filed October 23, 2019 with the United States Securities and Exchange Commission ("SEC"). The Proxy Statement recommends that Company stockholders vote in

favor of a proposed transaction whereby Argonaut Merger Sub, Inc., a direct wholly-owned subsidiary of Argonaut, will merge with and into Arotech, with Arotech continuing as the surviving corporation and as a wholly-owned subsidiary of Argonaut (the "Proposed Transaction").

3. According to the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each share of Arotech common stock issued and outstanding will be converted into the right to receive $3.00 in cash (the "Merger Consideration").

4. Defendants recommend that Arotech stockholders vote in favor of the Proposed Transaction based upon materially incomplete and misleading representations and information in the Proxy Statement in violation of Exchange Act.

5. In particular, information concerning Company financial forecasts and financial analyses and fairness opinion by financial advisor B. Riley FBR, Inc. ("B. Riley") relied upon by the Board in making its recommendation to Arotech shareholders to vote in favor of the Proposed Transaction is materially incomplete and misleading.

6. Disclosure of material information omitted from the Proxy Statement is essential for a valid and fair Arotech shareholder vote on whether or not to approve the Proposed Transaction.

7. Plaintiff therefore seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the omitted material information discussed below is properly and timely disclosed to Arotech stockholders or, in the event the Proposed Transaction is consummated absent such disclosure, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

9. Personal jurisdiction exists over each Defendant because each Defendant caused the materially misleading and incomplete Proxy Statement to be disseminated to Arotech shareholders in this District and therefore has sufficient minimum contacts with this District to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District and because Plaintiff resides in this District.

## PARTIES

11. Plaintiff Howard Lasker is, and has been at all relevant times, the owner of Arotech common stock, and has held such stock since prior to the wrongs complained of herein.

12. Defendant Kenneth W. Cappell has served as a member of the Arotech Board since May 2015.

13. Defendant Lawrence F. Hagenbuch has served as a member of the Arotech Board since March 2016.

14. Defendant Jon B. Kutler has served as Chairman of the Arotech Board since May 2016 and a member of the Board since February 2016.

15.     Defendant James J. Quinn has served as a member of the Arotech Board since May 2016.

16.     Defendant Arotech is a Delaware corporation and maintains its principal offices at 1229 Oak Valley Drive, Ann Arbor, Michigan 48108. Arotech common stock is public traded on the NASDAQ Stock Exchange under the symbol "ARTX."

<strong>SUBSTANTIVE ALLEGATIONS</strong>

**A. The Proposed Transaction**

17.     Arotech is a leading provider of quality defense and security products for the military, law enforcement and homeland security markets, including multimedia interactive simulators/trainers and advanced power supplies, batteries and chargers. Arotech operates two business divisions: Training and Simulation, and Power Systems and maintains research, development and production facilities in Michigan, South Carolina, Florida, and Israel.

18.     On September 23, 2019, Arotech publicly announced the Proposed Transaction via press release as follows:

> ANN ARBOR, Mich., Sept. 23, 2019 (GLOBE NEWSWIRE) -- Arotech Corporation (NasdaqGM: ARTX) today announced that it has entered into a definitive agreement with an affiliate of Greenbriar Equity Group, L.P. ("Greenbriar") under which the affiliate will acquire all outstanding shares of Arotech common stock for $3.00 per share in cash, representing an aggregate equity value of approximately $80.8 million. The $3.00 per share cash consideration represents a premium of approximately 32.7% to Arotech's closing share price on September 20, 2019, the last full trading day before today's announcement. The transaction, which was unanimously approved by Arotech's Board of Directors upon recommendation by a Special Committee of the Board, is expected to close in the first quarter of 2020. Following completion of the transaction, Arotech expects it will remain headquartered in Ann Arbor, MI.
>
> Transaction Details
>
> Under the terms of the merger agreement, Arotech's Board of Directors, with the assistance of its financial advisor, will conduct a 30-day "go-shop" process following the date of the announcement of the merger agreement, during which it

will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. Arotech will have the right to terminate the merger agreement to accept a superior proposal, subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed, and Arotech does not intend to disclose developments with respect to the solicitation process unless and until its Board of Directors makes a determination requiring further disclosure. The proposed transaction is subject to, among other customary closing conditions, approval by the holders of a majority of the shares of Arotech common stock. There are no financing contingencies contemplated under the terms of the merger agreement. Following completion of the transaction, Arotech will become a privately-held company and shares of Arotech's common stock will no longer be listed on any public market.

Advisors

Riley FBR, Inc. is serving as exclusive financial advisor to Arotech, and Lowenstein Sandler LLP is serving as legal counsel. Kirkland & Ellis LLP is serving as legal counsel to Greenbriar.

19.     To make an informed decision whether or not to vote for or against the Proposed Transaction, Arotech stockholders must be provided the material information alleged herein to be omitted from the Proxy Statement.

B. The Materially Incomplete and Misleading Proxy Statement

20.     On October 23, 2019, the Individual Defendants caused Arotech to file the incomplete and misleading Proxy Statement with the SEC and to disseminate the Proxy Statement to the Company's stockholders soliciting Arotech stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were each required to carefully review drafts of the Proxy Statement and to assure that Proxy Statement as filed with the SEC and disseminated to the Company's stockholders contained no misrepresentations or omissions of material fact.

21.     Nonetheless, the Proxy Statement at issue here, in violation of Exchange Act Sections 14(a) and 20(a) and Rule 14a-9, misrepresents and/or omits material information

5

necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

**Material Omissions or Misrepresentations Concerning Financial Projections**

22. The Proxy Statement fails to provide material information concerning financial projections prepared by Arotech management and relied upon by B. Riley in its analyses. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and B. Riley in connection with forming a view about the stand-alone valuation of the Company. Proxy at 37. Accordingly, the Proxy Statement should have included, but omits material information in the projections that Arotech management provided to the Board and B. Riley. Courts have uniformly stated that "projections … are probably among the most highly prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

23. For the Company Projections, the Proxy Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metric Adjusted EBITDA but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 37.

24. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

6

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

      25.      The SEC has stated[1] that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

      26.      Thus, to remedy the Proxy Statement and the materially misleading nature of the forecasts as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measure. Such forecasts are necessary to make the non-GAAP forecast included in the Proxy Statement not misleading.

      27.      With respect to the Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 14.0% to 16.0%; (iii) the basis for applying

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

exit multiples from 9.5x-10.5x; and (iv) unlevered free cash flows for calendar years 2020 through 2024 and the line items used to calculate them. Proxy Statement at 33-34.

28. With respect to the Premiums Paid Analysis, the Proxy Statement fails to disclose the premiums paid in the transactions observed by B. Riley in the analysis. Proxy Statement at 34.

29. In sum, omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

30. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

31. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

32. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement which fails to provide critical information regarding, among other things, financial analyses that were prepared by B. Riley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

33. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to disclose such information to stockholders although they could have done so without extraordinary effort.

34. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

35. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. The Individual Defendants acted as controlling persons of Arotech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Arotech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Arotech, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Arotech, and, therefore, is presumed to have had power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

40. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

41. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

43. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting Plaintiff such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

DATED: October 25, 2019

                Respectfully,

                STULL, STULL & BRODY
                By: /s/Patrick Slyne
                Patrick Slyne
                Aaron Brody
                6 East 45th Street
                New York, New York 10017
                Telephone: (212) 687-7230
                Facsimile; (212) 490-2022
                Email: pkslyne@ssbny.com
                Email: abrody@ssbny.com
                Attorneys for Plaintiff